Bridgford v. Crocker.

---

BRIDGFORD v. CROCKER, appellant.

*Bills and notes — rights of holder — misappropriation — Appeal — bill of exceptions.*

In an action against the drawee of a bill by the holder for value, who took it when overdue from the payee, it appeared that the payee was an agent of the drawer, and that the draft was designed to be used for a particular purpose. *Held,* that it was a question for the jury, upon the whole evidence, whether the payee misappropriated the bill.

On an appeal in an action the appellate court cannot review exceptions taken at the trial by the plaintiff, where the only bill of exceptions in the appeal is that prepared by the defendant. The plaintiff should also prepare a bill of exceptions and appeal.

APPEAL from an order denying a motion for a new trial. The action is by James Bridgford against Lemuel L. Crocker, as survivor of the firm of L. Crocker & Co., upon a check of the firm dated July 22, 1867, payable to the order of Pat. Gavin, which the payee indorsed and paid to the plaintiff October 26, 1867, in part payment of a lot of cattle delivered that day by plaintiff to Garvin. The opinion sufficiently states the case. The verdict and judgment were for plaintiff, and the motion for a new trial was by defendants.

*John Ganson*, for appellant.

*Wadsworth & White*, for respondent.

E. DARWIN SMITH, J. When this case was before this court on a former occasion, as appears from a manuscript opinion of Judge TALCOTT then before me, and referred to in *Cowing v. Altman*, 1 N. Y. Sup. 497, a new trial was granted upon the ground that the circuit judge erred in holding, as matter of law, that the check in suit was not overdue, and that the plaintiff was entitle as *bona fide* holder to recover the amount thereof. On the last trial the circuit judge, on the contrary, held and charged the jury as matter of law, that at the time Gavin transferred the said check to Bridgford it was overdue, it was dishonored, so that Bridgford, when he took it, would receive it with all the defenses which the Crockers could interpose if Gavin was seeking to enforce it.

And assuming that the check was diverted by Gavin, defendant's agent, to his own use, the learned judge charged, "That the plaintiff, taking this check when it was thus dishonored, could not recover upon it, except such transfer was made with the consent of the maker; that if Gavin used the check in payment of his own contracts with the consent and approval of the Crockers — if. they consented to that, then there was no misappropriation."

As the question was thus presented to the jury, the issue submitted to them was narrowed down to the single question whether the use made by Gavin of said check was with the consent of the maker of said check, direct or implied. On this question, considered and confined to the particular check and to this particular transaction, it seems to me that the verdict was not warranted by any direct evidence. There is no affirmative evidence of any express consent by the Crockers to a misappropriation of said check or to the use made of it by Gavin in paying his own debt. Crocker denied giving any

such consent, and Gavin also denied it. But the question remains whether there is any or sufficient evidence in the case to authorize the jury to imply such consent to the use made of this paper, notwithstanding these denials.

The facts stated and admitted by these witnesses, and proved by other witnesses, and the intrinsic and undisputed facts of the case, I am inclined to think were sufficient to make it the duty of the circuit judge to submit the case to the jury, and to authorize the jury finding or implying a consent on the part of the Crockers to the use made of this check. The facts in proof clearly show that this man, Gavin, was trusted as the agent of the defendant in the spring, summer and fall of the year 1867, with checks to be used and put in circulation in the west in the purchase of cattle and other stock, to the amount, in the aggregate, of $50,000; that these checks were more or less used by him during several months for the purpose for which they were issued, and under circumstances which involved notice to the defendants of the use thereof made by him.

The checks, upon their face, were a species of general unlimited letter of credit or draft, payable at sight, and authorized him to utter, circulate and transfer them, when and to whom, and where he pleased, if the others are, as I presume the fact to be, in the same form with the one produced on the trial of this cause.

The one produced at the trial is in the following form :

"No. 2,593.  "NEW YORK CENTRAL STOCK YARD,
          "BUFFALO, N. Y., *July 22,* 1867.

"Mechanics' National Bank pay to the credit of Pat Gavin five thousand dollars.

{ U. S.  stamp }        "L. CROCKER & CO."
{ 2 canceled. }

The check is indorsed as follows:

"Pay James Bridgford, or order.

                              "PAT GAVIN."

The plaintiff testified that this check was indorsed and delivered to him by the payee, Patrick Gavin, on the 26th of October, 1867. Considering that the man, Gavin, held $50,000 of such paper, and through the summer he was using and paying it out as he pleased, in the purchase of cattle and hogs, and other stock, to various persons, and that such checks were paid by the bank or otherwise provided for by the makers, that they were notoriously

made to be used for such purpose generally, as Gavin should think proper ;. that this paper was so used in fact in the purchase of stock, and that it never had any validity or inception till the same was so indorsed and negotiated by said Gavin for that purpose, and never was in fact payable or presentable at the bank for payment, or intended to be until it was so indorsed and negotiated in fact by said Gavin, I think the jury might reasonably consider and hold that said Gavin had a general authority from the defendants to use these checks as he thought proper, and that in this sense the defendant did consent to the use made of this particular check. The jury having so found, doubtless, upon this general view of the whole facts of the case, and the discrediting statements of Crocker and Gavin, and other testimony, and the judge who tried the cause having, at special term, refused to set aside their verdict, we hardly think we are called upon to reverse them both upon the facts. The jury had a right to give such force to the general facts of the cause in view of the position, conduct and appearance of the defendant and Gavin as they deemed just, though in conflict with their particular statement on any point. The credit of these witnesses belonged to the jury, and it was their right to pass upon it in the light of the whole evidence. The cause was submitted to the jury in a charge exceedingly fair and most favorable to the defendants — more favorable perhaps than it would have been if the learned circuit judge had not felt controlled or embarrassed by the decision of the court in setting aside the former verdict and directing a new trial.

The question presented on the points of the respondents' counsel in part, that this check was not overdue at the time of its negotiation, and the exception upon the amendment of the defendant's answer on the trial, are not properly before us for decision upon this bill of exceptions and appeal. If the plaintiff desired to present any such questions to the court upon exceptions taken by him at the trial, he should also have prepared a bill of exceptions and appealed. *Briggs* v. *N. Y. C. R. R. Co.*, 28 Barb. 516; Graham's Pr. 325; 1 Cow. Pr. 240, 253.

The particular exceptions taken during the progress of the trial, we think are not well founded.

The order of special term should be affirmed.

*Order affirmed.*